May it please the court. My name is Paul Sun. I represent Ikeviaun Johnson. Mr. Johnson was convicted of forcibly assaulting federal officers and a related 924 C count. The conviction of forcibly assaulting federal officers was plein air as the government concedes because the superseding indictment did not plead one of the essential elements of that charge, did not plead forcibly. You know, it's sort of interesting. I try to figure out what happened here because the government's usually copies of statute verbatim in their indictments, at least the U.S. Attorneys. Well, that's exactly what they did. They copied the statute verbatim, but at the point where forcibly should have been, they included feloniously. So I'm wondering whether somebody sat there and did it in the handwriting and wrote an F and it was mistyped. It could be a typo. It's clearly missing. The forcibly is clearly missing and they put in the word feloniously, but I thought I'd just share that observation. And your honor, the plein air conceded by the government is the first two elements of plein air relief. That there was air and it was plein and Mr. Johnson respectfully contends that he can show the other requirements of plein air relief. That his substantial rights were affected and that the air seriously affected the fairness, integrity, or public reputation of the judicial proceedings. Mr. Johnson also showed... You know, that affecting the proceedings was a difficult hurdle for you in view of the fact that the instructions clearly told the jury that they had to be it had to be done forcibly and then the court went on and defined forcibly for the jury as a separate paragraph and which even highlights that aspect of it. It's hard to believe that the jury would disregard such fairly extensive instructions on the word forcibly. Your honor, looking at the instructions as a whole, which this court says we must do, there are instructions as to that charge, which is count four, the forcible assault charge, that does not, that do not include the reference to the word forcibly. You're saying the instructions are inconsistent. They're inconsistent. I mean, you're saying that. The fact that they left out an element, does that mean they didn't charge a crime? They didn't charge this crime. They didn't charge any crime. Well, they didn't charge that. They didn't charge section 111A. Well, that was the allegation. Yes. That was the number. They had the number in it. Yes. Well, maybe it's enough to just put the statute number in there. Not anymore, your honor. The court has made clear that you have to allege the element. It's your position they didn't charge a crime. Correct. Well, you haven't argued that they, that means that they violated the Fifth Amendment. It says that the defendant's entitled to be indicted. Yes, there is a Fifth Amendment right here and a Sixth Amendment right here. But you don't raise that. I did, your honor. I said, I argued that the right that's violated here is Fifth and Sixth Amendment rights. You weren't the trial lawyer. I was not. I know. And his lawyer in the district court didn't move to dismiss the indictment. Did not. And the indictment was one time superseded. Yes. And they put, they corrected a couple clerical errors. Right. But they didn't fix this one. Right. So they were, he was actually being tried on a superseding indictment. Right. That didn't fix the failure to charge a crime in count four. Right. Count four. And then they had a trial on the charge that didn't, that wasn't a crime. He didn't charge the elements of the offense. But his own lawyer offered an instruction that fixed it. And the prosecutor offered instruction to fix it. Both lawyers offered instructions that fixed it. Right. Both lawyers offered instructions that included the word forcibly. Included the word forcibly. You don't have to say it fixed it. They included the word that was left out. Yes. Does that mean that the indictment was amended at the at the trial? Couldn't do that, Your Honor. No. We've said you can't amend the indictment. Supreme Court's actually had cases where they omitted elements of the offense. I'm trying to think which one it was, but, and the court says you conduct a plain error analysis. It is. The Cotton case. Yeah, the Cotton case, the Supreme Court said you can fix it. I mean, you can, if the evidence is overwhelming and uncontroverted. Right. But I'm just bothered by the fact that it comes up here like this. Well, and again. There's no question that it's sloppy practice. And it's not just on the prosecutor's part. It's on the defense lawyer's part. Both sides. I mean, the prosecutor's admitting error. Admitting plain error. And they shouldn't be having to, they shouldn't have to do that. Somebody can read the statute. And the defense lawyer should have made a motion to dismiss. Right. They weren't going to, or you should have told them about it. Somebody back a phone call. They left out the, I don't know what to do, but it's a mess. And maybe the Cotton case says that you can fix it. Supreme Court of the United States. We're in plain error. Does that make your argument faulty? Or can we still do something under prong four? Yes. I have to show. But can you reach prong four without deciding prong three? You do have to, Mr. Johnson has the burden to show all four requirements. That's right. But I want to circle back just briefly to Judge Nemar's comment about the jury instructions and highlight one thing. When the trial court instructed the jury, it talked about the verdict form and said I'm going to attach the superseding indictment to the verdict form. So there are a lot of instructions in there. There's some of them that talk about forcibly. But when the jury went back to the jury room, because there's nothing in the record that shows that the instructions went back to the jury room, what did go back is the verdict form. And the verdict form has attached to it the superseding indictment. So when the jury is deciding, are we going to convict, find guilty or not guilty, what's right there is the defective indictment. And that's part of the instructions and we think makes a compelling argument why a jury might well, in this kind of, depending on the burden, read the word feloniously to require forcibly. Because they were told what had to be, that forcibly had to apply. And that word feloniously is in there. It is. And that wasn't defined for them. But I do have to show all of the elements to get plain error relief. And the third element is effect on substantial rights. And the right here, again, at issue, Judge King, is the Fifth Amendment and Sixth Amendment rights to have the grand jury charge all of the elements. But what the Supreme Court has said is... But doesn't have to be prejudicial? Yes, that's what the Supreme Court says. That Mr. Johnson would have to show that but for the error, there's a reasonable probability that the jury would have come to a different conclusion. In other words, found him not guilty. Well, let me just move on to a little bigger picture and you can tell me it's totally irrelevant. But the jury was presented with evidence that the force used against the officers was the shooting of a gun. And the defense was that, well, he didn't aim or didn't hit them or didn't really threaten them. But the fact is the charge was that they had to resolve that the defendant used a gun against the officers. Yes. And your argument, of course, is whether the gun was sufficiently directed at the officers. But that's what they're resolving. Now, is there any doubt that the use of a gun would be forcibly? Well, if you're holding the gun... No, I'm assuming that they had to resolve that the gun was satisfied the assault of the officers. But the question is forcibly is an adverb. That's how that he used it. My question is, wouldn't the assault have to be forcibly if they found he used a gun against them? There was no other... This is not a case where he offered to hit them or slug them or he's speaking bad words against them. He used a gun. Right. And if the jury were to find that the gun was indeed directed at the officers and assaulted the officers, then the fact that a gun was being used would necessarily be forcefully, wouldn't it? Well, I think it has to be, and your Honor said this, directed at the officers. No, I know, but that doesn't solve the... They were firing at the car, weren't they? They were in the car. They were in a car. Yeah. They were firing at the car. And they didn't know they were officers, I thought, under the evidence. They did not. But they were officers. They're FBI agents. And they were going through the stoplight or something. Well, and... But they were firing at whoever, they were mad at whoever it was they thought was in the car. Well, the evidence is... They had a bad intent. They were, they didn't... My whole point, that goes to the sufficiency of the evidence argument you have, but my point is on the word forcibly. The fact that the instrument in this case was a gun seems to me it's not overwhelming, it's conclusive, that if you used a gun in the form of an assault, then it's forcibly. If you used a gun in the assault. Let me put it this way. Could a reasonable jury, could any reasonable jury conclude, yes, your client assaulted the FBI agents with a gun, but it was not forcible? I don't think in this case, Your Honor. Right, you couldn't. Not in this case, Your Honor. But, but the evidence is, well, there's no... That's on the sufficiency. I don't think, I think it covers both, Your Honor. The sufficiency is that this, the, they didn't, Johnson didn't know that these were officers. He thought it was a rival gang, and he fired the shot and missed, but fired the shot at that car. There's nothing else there, according to the evidence. So he was firing at that car, thinking it was a rival gang, isn't that right, or group? Well, I'll vary slightly, Your Honor, in that there isn't evidence, there is not evidence, that the shots were at the car. Agent Miles says, I didn't see gunfire at all. I just heard it. I just heard it. I didn't see gunfire at all. I couldn't see in the car. There were three witnesses. There were six people in the car altogether, but three witnesses testified. Two of them, Acklin, who was the driver, says, well, they all say Johnson was the shooter. They're, they're consistent in that. Acklin, the driver, says, the, the gun was by my head, so out the window in the back. Ms. Little, who's next to Mr. Johnson, says, I put my head down. I didn't see anything. Ms. Carr is the only one who says, Johnson shot at the vehicle behind us, and that's at J, that's at JA 90, JA 96, and she repeats behind us at JA 108. Well, it was behind them. No, it wasn't. It never was. I thought it was following them. The, the... At one point? No. According to Agent Miles, the Black Explorer, so the full facts are, they're in this cul-de-sac area trying to conduct surveillance, and they leave that, and they turn right on what's Old River Road, and they turn back. This is Agent Miles and Task Force Officer McKnight. Turn back around and head the other way, and they see this Black Explorer, Agent Miles, is coming up rapidly behind them, and, and Agent Miles decides to try to determine, are they following us? So, off of Old Airport Road, he takes a right, Old River Road, I'm sorry, off of Old River Road, he takes a right on Airport Road, Explorer comes behind him. He takes a left on Perkins. The Explorer keeps going. Agent Miles does a U-turn on Perkins, comes back out, because he says, we want to get behind, we want to get behind the Explorer, because we want to check the license plate. We want to see who this is. So, he comes back out on Perkins, out to Airport Road, and turns left. That's the direction that he saw the Explorer going, but in his rearview mirror, so behind him, he sees the Explorer come up to the intersection. So, at all times, the Explorer is behind the unmarked vehicle that has Agent Miles and Task Force Officer McKnight. So, there's... But there was no car behind the car Johnson was in, was there? Agent Miles says the only cars on the, on the road that he saw were his car, the one he's driving. No other cars besides the Black Explorer that, that Ackland is driving, and that Mr. Johnson's. He says that's the only car we see. So, then if you hear shots, they're probably aimed at your car. There's no one else to be aiming at, right? If you're aiming. I mean, the question isn't really whether someone tried to shoot the officers. It's whether the officers were in reasonable apprehension when they heard gunshots and radioed in, were under fire, and put on their body armor. So, what's the best case that, like, they were just being way over cautious? Well, I think, may I continue, Your Honor? Why don't you take one more minute? Okay. So, the best case is, they didn't, Agent Miles, didn't see anybody shooting and a Task Force Officer shooting at them. I mean, in this day and age, if I hear gunshots, whether I see someone aiming at me or not, I feel that I am in reasonable apprehension that someone is shooting and that I might get hit. My best case scenario. I mean, our kids are taught that in school. It's wild. My best case is, Agent Miles didn't see anyone shooting. They did go after, he drives after the car. He doesn't shoot at it. Now, he says, I didn't, that was, that was not policy. I didn't shoot at it. Yeah, we don't really want to, like, fault police officers for not doing these things that have been, these high-speed car chases with firing at people, which most police forces have said is unduly dangerous to people. But, but those are the facts that I would highlight. Judge Harris, thank you. Thank you. Ms. Engel? Engel. How does indictment get amassed up? Thank you, Your Honor. Kate Engel for the United States. Your Honor, no question that there was an error in the indictment. As best we can tell, there was a form template that was incorrect. It has now been corrected, but that's what was used. That's even worse than what I anticipated. I thought forcibly and feloniously could have been handwritten by somebody and just misread, but if you had a template, that's even sloppier, I guess, but you fixed it. There's no excuse for it, Your Honor. It is, it was an error that was plain, but hopefully we've got somebody reviewing indictments. I mean, that's, There's no question. I know this Cotton case seems to settle this, maybe, but this seems like it's a structural flaw to me. You ought to be, have to be indicted to be tried in the United States of America. Your Honor, this case, so this issue was raised for the first time. And this indictment was not an indictment. Well, it was an indictment. It had an error in it. There's no question about that. An indictment alleges the elements of the offense. That's rule number one of what an indictment is. And it's in the Fifth Amendment of the Constitution. That's absolutely true, Your Honor. There is no evidence, however, in this case that... We expect the government to do things right. And it's plain English. It's not hard to do. These are simple indictments, not a complicated one. It's a simple statute. There's no indication here that the error in the indictment impacted the defendants substantially. But then you had a superseding indictment that fixed something else, and nobody read the indictment or the statute at that point. Fortunately, in this case, Your Honor, the jury was properly instructed that forcibly was a necessary... And then, as he points, as Mr. Sun points out, the flawed indictment was given to the jury. Yes. And forcibly was, whatever, the one forcibly was left out feloniously was in there. But the... Knowingly and forcibly. The court repeatedly instructed the jury that they had to find that the defendant acted forcibly in order to convict him beyond a reasonable doubt. They did that. They... The court used the word forcibly eight times. It said forcibly is an element. It defined the element forcibly. And, more importantly, Your Honor, there is no question in this case that the defendant acted forcibly. That is, was not contested. I agree with that. The evidence... That's right. But the defendant was entitled to be indicted under the Constitution. And the United States Attorney is supposed to sign the indictment. And so does the form of the grand jury. And the form of the grand jury relies on the United States Attorney to get it right. And it's not difficult. I agree, Your Honor. It was absolutely a mistake. It should not... And you confess error, but only as to the first two probes. That's right, because the defendant was not prejudiced by the error here. The jury was properly instructed. And the defendant also... There's evidence the defendant had actual knowledge of the elements because he submitted jury instructions that include the element. The government... So it's... You're arguing what I used to call, or I still call, the clearly guilty rule. Right? He's clearly guilty, so he doesn't need to be indicted properly. He doesn't need to be tried fairly. Well, the system means something. We're supposed to do it right. It needs to look right. And that's what that fourth element of harmless error is about. What's it say? What's the fourth element of harmless error? Seriously affect the fairness, integrity, or public reputation of the judicial procedure. The public reputation of the proceedings is adversely impacted when you try somebody without indicting them first. Your Honor, I'd point the court to the Supreme Court's case, United States v. Greer. That was the case... I mean, these guys, they're pretty clearly guilty, and they deserve some time in jail, and they got it. But the public reputation of the proceedings is that they be fair. If these guys are going to be treated unfairly, the next case is not going to be as clear. The proceedings here were... If you get away with it in this case, you're arguing we don't have to worry about the indictment in the real close case. Your Honor, the government is certainly... It's going to be affected. The reputation of the proceedings is going to be affected. The reputation of the lawyers are affected. It wasn't just your side of the lawyer offense, it was the court-appointed lawyer who didn't know enough to make a motion to dismiss, to read the statute and read the indictment and know that an element was left out. And you could make a motion to dismiss, it'd be one sentence long, and then the U.S. attorney wouldn't have known enough at that point to go back to the grand jury and put the right words in the indictment, put the elements in the indictment, and it had a good night. And he would have done something good for his client and for the system. I agree, Your Honor, and that was... We wouldn't have this. Agreed. That was not done here. So, but everyone, the point stands that everyone understood what the necessary elements were that had to be proved at trial. They understand them because they were supposed to be written down. They understand them because they were supposed to be written down in the indictment. That's what the Fifth Amendment says. So I'd point the court to United States v. Greer, which is a case where the government failed to allege an essential element and... Well, they had gotten to Greer, and Greer came to this court. I know these cases. But in Greer... I understand them. In Greer, the... But the fourth prong of the harmless error doctrine is what you said it was. The public reputation of the proceedings would be adversely impacted. Right, but we... If they're sufficiently adversely impacted, you don't satisfy harmless error. But this is not harmless error, so... It's plain error. You don't satisfy plain error. Do you understand what I mean? It's like me saying it, you saying it, you don't have to put the words in the indictment. I don't have to get them in my questions, not through my remark. Your Honor, I think a couple of points. So, first of all, in Greer, the government didn't allege one of the essential elements, and the jury was not instructed that they needed to find that essential element. And the Supreme Court... Right, and his own lawyer fixed it for him. Rather than objecting to your instruction, he gave an instruction that fixed it for you. Your Honor, certainly if he had objected at any point before trial, the government would have sought a superseding indictment to fix the error. That's why we're on plain error here as opposed to... They were instructed, right? But then they were given the wrong indictment. Which is inconsistent, as Mr. Sun says. The things are inconsistent. He gave an instruction, but then gave an indictment that was inconsistent with the instruction. I don't think that the instructions were inconsistent. In the portion of the instructions where the judge tells the jury, here are the elements... Where the instruction was correct, and the indictment was wrong. That's right. They were inconsistent. And the indictment went to the jury room, was with the verdict form. Even if the jury... That's what the record shows, anyway. That's right. And that is what the record shows. But even... Did you try the case? I did not, Your Honor. Even if the jury hadn't been properly instructed here, and they were properly instructed, the defense still has not shown any reason to think that the forcibly element wouldn't have been met. So the evidence on forcibly is overwhelming. You're arguing clearly guilty. I'm arguing that he wasn't prejudiced by the error.  The evidence was that the defendant shot a gun eight times on a public city street in Greenville, North Carolina. Well, does the public reputation of the proceedings require that he be prejudiced? The fourth prong, that part of the fourth prong of the plain error standard? It does, Your Honor. Does that require prejudice? It does, because the court cited Cotton. The evidence is overwhelming. I'm talking about the fourth prong alone. I think yes. Wasn't Cotton decided on the fourth prong? It was, Your Honor. The Supreme Court, they skipped over three, went right to four, said the evidence is overwhelming and uncontroverted, so you haven't met prong four. That's exactly right. So our position is that as to both prongs three and prong four, the court should consider the fact that the evidence was overwhelming. But I think even before you get there, it's important to recognize that the defendant did have actual knowledge of what the correct elements were. The jury was properly instructed here. And so, again, conceding completely that this was an error. There couldn't even be an argument that the word feloniously in the indictment would not be read by the jury to be inconsistent with forcibly. The court could have been explaining that feloniously meant forcibly because it required forcibly as an element of the defense when instructing the jury. I don't want to justify the use of feloniously, but I'm not sure a jury would have perceived feloniously to have been inconsistent. It just needed further definition, and the court gave that. But maybe they did. That's what Judge Kings pointed out. I agree. And I also will just point out that the indictment did talk about a firearm. So in count three, the defendant is charged with discharging a firearm in connection with a crime of violence. So there was indications there that forcible conduct was part of what the government was charging. But, again, it was a mistake to not have the word forcibly in there. There's no question about that. Unless the court has further questions on this, I'll move on to the sufficiency of the evidence argument. So the defendant has not shown that no rational trier of facts could have found him guilty. There was substantial evidence that Johnson shot at the officers and that his actions were perceived by them, created in them a reasonable apprehension of immediate bodily harm. And I just want to touch on a few of the facts that I think are important here, because I think the reply brief frames this as the officers heard popping noises and there was some sort of confusion. That's really not consistent with what the evidence was at trial. So at trial, Special Agent Mines testified that their vehicle was being followed, that essentially another vehicle came up on them very quickly. They made some evasive maneuvers to try to determine if they were being followed, and that he did say he heard popping noises, but then he said they sounded like gunfire. That's at 54 to 55 of the record. He immediately told his partner, Officer McKnight, we're being shot at. Officer Mines testified that McKnight agreed that they were being shot at, and they radioed that they were taking fire. And he even said in his testimony at 57 to 58, to me it sounded like small, semi-automatic, small-arm, semi-automatic gunfire, and that is consistent with the gun that was found in the vehicle. I think the fact that the officers followed the car is evidence that they perceived danger. Other officers, first responders, are trained to go towards the danger. So the fact that they followed the car is evidence that they didn't write this off as sort of a nothing thing or weren't at all confused as to what was happening. They perceived themselves to be in danger. And it's also not factually true that there was no evidence that Johnson was shooting at the car. So the testimony from the folks inside the car was that they were targeting this white vehicle, that they were following it. Somebody believed that a rival gang member was inside the vehicle. They didn't know they were federal officers, though. Correct. They did not. But that they were following that vehicle, they were targeting that vehicle, and one of those people testified that shots were fired at the white vehicle. I know there is some confusion in the record about whether the vehicle was behind or in front. I would just point out to the court, the testimony was that the firing was at the vehicle. It would be a credibility determination for the jury as to whether that testimony was credible. And certainly there is plenty here in the record for the jury to have found that the officers had a reasonable apprehension of bodily harm. And if there are no further questions on that, I'll move quickly to the sentencing issue, which I'd like to address. The district court did not abuse its discretion in sentencing Johnson to an upward variant sentence. Just to clarify, so you are not defending the sentence as a departure. In your view, this was a variance, and that's the ground on which you're defending it. That's correct, Your Honor. So the statement of reasons indicates that it's a variance. That's at 344 in the record. The court ultimately talks about departure and variance, but ultimately does say that he's varying. That's at 338 in the record. And at 341, he says that it was based on the 3553A factor. So I think it's pretty clear from the sum total of the record that it was a variance. What was he talking about with the step-down process? Did he use that to figure out the variance? I think that the court was trying to anchor his ultimate decision in some type of a guidelines band, and that he was making an effort to find that band the same way you would if you were doing a departure, but I don't think it was inappropriate here to do it as a variance. And the court did explain, I think, why it was doing it pretty clearly. The court talked extensively about the danger of the conduct the defendant had engaged in, talked about the fact that it was basically luck that no one had been hurt or killed. The sentencing court was also the trial court, so it had heard all that testimony. It heard pretty extensive victim impact statements. And it also cited certain paragraphs of the PSR. I had a question about that. The district court incorporates paragraph 18, which has a ton of stuff in it, and the district court doesn't say for what or why he found it significant. I'm not sure I've run across that before. What kind of weight am I supposed to give that? I literally don't know which of the many things in paragraph 18 the district court was talking about. Well, I think paragraph 18 deals with what a confidential witness said the defendant was doing while he was in custody pre-trial, and I assume post-trial, but pre-sentencing as well. I think that that conduct concerned the court. He talked about the defendant trying to join gangs while he was in prison, and also making admissions to that person about certain offense conduct that was proved at trial. The court was relying on that. So in your view, I should read that incorporation as saying each part of paragraph 18 bothers me for reasons that should be self-evident. I think that the court said a lot of things about what it was concerned with here. If you took out the incorporation of paragraph 18, would that be a problem for your argument? No, Your Honor. Because I think, again, most of what the court is talking about is the offense conduct being really concerning. And again, this is looking at a sentencing for— obviously there's a 924C, which is 10 years consecutive, but then there's sentencing for the assault, and the guideline range on that is 30 to 37 months. This is obviously— This is a question that I've had so many times, sorry, since you still have three minutes. When we're trying to measure sort of the degree of a variance, are we supposed to look at the total sentence adding the 120 months, or do we just look at the assault sentence? Because you come up with a different delta. What's the right approach? I never—I've always wondered that. Sure, Your Honor. I'm not sure I frankly know the answer to that. I think that you could look at the whole sentence and say— certainly I think that's what the court was doing, was looking at the whole sentence. But I do think it's worth noting that this is on the very, very above the guidelines range type of assault conduct because this is not, you know, spitting at an officer. It's not punching an officer. This is, you know, obviously ultimately the government did not proceed with any kind of attempted murder, but this was a shooting. And again, they didn't know that they were officers, but this was a shooting indiscriminately at another vehicle. So it's at the very high end of what could be considered, I think, assault conduct. I think the judge, if you're reading between the lines a little bit, maybe not even explicitly, I think the judge was very concerned about the nature of this conduct in the sense that if somebody had been hit and killed, it would have been a federal officer. And we're talking about a hugely problematic type of crime in the judge's mind. And it was just because he was a bad shot that we didn't have more consequence. And I think the court thought this crime, therefore, was serious on that basis. That's what I took from it. That's absolutely right, and that's exactly what the court said. He said when he fired those eight shots at the car that two FBI agents were in, he could have killed them. It was just the result of lucky physics that, you know, the bullet's not hitting the target. But he did point out, I think, we could have had two dead FBI agents here. What would the appropriate punishment be then? And it would be very, very high, obviously. I think defense counsel's response to that would be it would be life or the death penalty. So that certainly went into the court's consideration of what an appropriate sentence was here. And I just point, you know, I know that the court did engage in sort of stair-stepping that would be more consistent with the departure, but the court said at the end, he believed that the range that he ultimately landed on more appropriately fits the seriousness of the offense, the need for punishment equivalent to the danger, and the attack on law enforcement institutions. I think that's a more than sufficient explanation for why the court did what it did there. I did want to just briefly address, I know my colleague in their brief addressed the fact that there were some disputed portions of the PSR that were relied on. I just want the court to understand that they weren't actually truly disputed in any kind of factual sense. I know we cite United States v. Terry in our brief, but I want to point the court to 306 of the record, which is the objection. The objection says the defendant respectfully objects to the statements contained in the noted paragraphs. As the statements relate and pertain to all of the appellate rights afforded to him, should he choose to employ those rights upon entry of judgment in the matter, that didn't give the court anything to go on in terms of actual dispute as to those paragraphs. So we would submit it was totally appropriate for the court to rely on those. And I see my time is almost up. If there are no further questions, I'll sit down. All right. Thank you. Mr. Son, do you have something to bubble? May it please the court. I will pick up again on the absence of evidence that Johnson or anybody else was shooting at the vehicle. The only testimony of anyone, it's not Agent Miles, it's not Acklin, it's not Little, it's only Carr. And she says he was shooting at the car behind us. And as we pointed out, we cited the U.S. v. Patterson case. It usually is a credibility determination, but not when it's physically impossible. The police vehicle was never behind the Explorer. It's physically impossible to be shooting behind, that's what she testified to twice, 96 and 108. And so there's no credible evidence that Mr. Johnson or anyone else shot at the vehicle. Who was he shooting at? He was shooting. Pardon me? He was shooting. I know. Who was he shooting at? There's no evidence he was shooting at anyone. Well, it's not okay just to shoot up. I mean, I guess I don't understand if you shoot up in the air on a city street and somebody hears it, why aren't they in reasonable apprehension of bodily harm? And, Judge Harris, I did the best I could to give you what I thought was my best case scenario, but I did forget one detail. And actually, counsel mentioned this. There were substantial victim allocutions at sentencing by both Agent Miles and Task Force Officer McKnight, who said, I was fearful. I was in fear. No such testimony at trial. The government didn't elicit any of that from Agent Miles, so the jury didn't hear any of that. Now, it's a reasonableness test, and I can see that. That's what the statute says, reasonable apprehension. But when the government has the burden of proof and doesn't put on the testimony of one of the two, Task Force Officer McKnight did not testify. Only Agent Miles testified, FBI Agent Miles. But it came in that they put on the body armor, right? After they tried, yes, Your Honor, they did. After they tried to chase down the vehicle, decided that they couldn't, they lost it, then they stopped and put on the body armor. Yes, they did. May I also address the actual knowledge question to the extent that goes to substantial rights, and I think that's the government's argument. And we cited the Hooker case in our brief. Actual knowledge does not determine that rights are violated. Hooker is not a plain error case. It's a motion to dismiss because the indictment is defective. But obviously in that case, the defendant knows that the defect exists in the indictment. And Hooker doesn't say actual knowledge has anything to do to undermine the right that's at issue here, which is the Fifth Amendment right. It is the case, Judge Harris, that the court, in fashioning its sentence, can take into account on the non-mandatory minimum part the fact that the court is imposing a mandatory minimum on a related count. I'm embarrassed to say I can't remember the name of the case. It's a Supreme Court case, and actually I cite it all the time when I'm arguing for a lower sentence in the district court because when there's a mandatory minimum sentence, I want the district judge to know or think about, look, you're already giving five years or ten years or whatever it is. That ought to be a reason to consider a lesser sentence. So it is certainly the case that it's the total package that the court properly considers, and that includes in this case a mandatory minimum sentence. That makes the degree of the variance less in this case. If you just look at the assault, it's a big variance. If you look at the total package, it's not that much of a variance. On just the assault, it's more than double the top of what the court finds is an enhanced, because the court adds the instruction enhancement, an enhanced guideline range. Respectfully, Your Honors, convicting Mr. Johnson of forcibly assaulting federal officers when forcibly that element was not pleaded in the indictment, his plein air, Mr. Johnson respectfully contends that he has shown the other requirements for plein air relief, that his substantial rights were affected, and that the fairness, integrity, or public reputation was substantially affected. And there is overlap when you're talking about the weight of the government's evidence, because unless it's only the case when the evidence is overwhelming and essentially uncontroverted that... Yeah, but see, the evidence we're focusing on on the absent element, which is forcibly, is whether the gun is an element of force. And it seems to me on that it's almost conclusive. Whether the force was used against a federal officer is the other question, but that would not have been affected by an indictment that had forcibly or didn't have forcibly. The forcibly clause adds the element of use of force, and it seems to me on that issue we had the evidence that the gun was used. Under the statute, the deadly or dangerous weapon part, which allows for an enhanced statutory maximum, has to be used in the commission of the offense. Well, I'm talking about the indictment. It's an adverb modifying the assault, in other words, you commit the assault forcibly. And the question is it said feloniously, and the judge says forcibly, but it was not in the indictment. My point is when you're looking at the evidence with relation to that, the only question is there's no question that force was used and the jury was instructed on force. In other words, they could not have ever found non-force with the use of a gun. Now, they could have found that the force was not used against the officers, but that's another issue. But anyway, I understand your point. Thank you, Your Honor. You're court-appointed, are you? I am, Your Honor. I want to acknowledge that service. It's so important, as you know, and we value it very much, and you did a nice job. Thank you very much. We'll come down and greet counsel. We'll come down and greet counsel and proceed on to the last case.
judges: Paul V. Niemeyer, Robert B. King, Pamela A. Harris